The next case is Green Haven Prison v. New York State Good morning, Your Honors. Frederick Dettmer for Plaintiff's Appellants, the Religious Society of Friends, better known as Quakers. And I want to stress to the Court that while there are prisoner claims in this case, the plaintiffs in this case include every religious body of Quakers that had any standing at all. I've reserved three minutes for rebuttal, and I invite the Court to start asking me questions without awaiting the three minutes, or else I will just fax eloquent on my own. Quakers have a long history of insisting on their right to practice their by the powers that be, and this is another one of those kinds of cases. That insistence led to the New Netherlands Governor Peter Stuyvesant prohibiting Quaker meetings in Flushing, Queens, back in 1657, which resulted in the Flushing Remonstrance, the earliest predecessor to the religious clauses of the First Amendment. It also led to William Penn, when he was a young, fresh Quaker, being arrested and tried for insisting on his right to preach in public in violation of the Conventicle Act. That case led to the Russell case, which established the sanctity of the jury room, even to the point of jury nullification. The Religious Society of Friends believes that God resides within each of us, that every seeker can hear God's voice directly without requiring clerical intercession, that every believer has the competence of clergy to preach the Word of God, and that the Society of Believers, known as Friends, can only grow and mature in their spiritual awareness through a process of sharing and testing that individual revelation. It was this process that led and enabled the Quakers to become the conscience of this nation in advancing religious liberty, abolition of slavery, the rights of women, and, most pertinently, prison reform. Mr. Detmer, Judge Lynch here. You said at the beginning, stressed, and I appreciate the fact that the Quaker meetings or churches, they're called meetings, right, in Quakerism, not called churches? There are some variations, but yes, they're called meetings. I will refer to them sometimes as churches because most of the rest of the world doesn't always understand. Okay, fair enough. I just didn't want to use a terminology that was inaccurate, but I understand that the meetings are plaintiffs, and I don't think that their standing to raise First Amendment questions is challenged here, but the RLUIPA claims are only claims of prisoners. Is that right? Because the statute only applies to institutionalized persons? Yes, Your Honor, RLUIPA is limited to persons residing in a prison. In this case, that includes the two individual plaintiffs, and it includes the Green Asian prison preparative meeting. Well, this is the question I question because I think we have the First Amendment claims in the case in any event, but you agree that at least as far as the individual prisoners are concerned, they would have to exhaust their administrative remedies in order to bring a RLUIPA claim on their own behalf? They would have to exhaust any available administrative remedies, absolutely, Your Honor. Okay, and you have an argument about whether there are available remedies. I understand that, but I just want to go on and assume for the moment that we disagree with that. We may not, but assume that we disagree. You want to say that their organization of prisoners independently can bring RLUIPA claims on their behalf and on behalf of the members who are prisoners without exhausting remedies? I do, Your Honor, and I say that for two reasons. The first is the well-established jurisprudence that a church has independent standing to pursue the claims on behalf of its flock, even when members of that flock do not have standing or are not parties. And second, the requirement to exhaust your grievance procedures is only applicable when there is a grievance procedure. Well, I understand that argument. That's a separate argument. I'm trying to pursue this question of institutional organizations within a prison. Is this a right that is unique to religious organizations? For example, suppose a group of prisoners formed a political association and then claimed that their rights, their personal rights were being violated by the prison. Could they avoid the exhaustion requirement by saying, oh, it's not we as individuals who are bringing this, it's we as an organization are bringing this claim? Your Honor, I think that's an interesting question. And in this case, it's not pertinent because a political organization would not have a RLUIPA right at all, right? Well, but they have other types of rights. The question is, in my mind, can prisoners avoid the exhaustion requirement altogether, as it applies to whatever kind of claims they might have, at least if those claims have any kind of collective quality? I can't see quite how this would work if the prisoner claims he was beaten or something. But with First Amendment claims, you wouldn't have to exhaust because you could just say, I'm bringing this on behalf of the independent Democrats or something like that. Not as me, myself, to get my First Amendment rights and our First Amendment rights enforced. Your Honor, first of all, in this case, unlike a typical case, we're not talking about an individual's rights being damaged, but the entire rights of the church being extinguished by the acts of the defendants, the Department of Corrections. If, in fact, DOTS were to eliminate entirely some organization, if the prison were to eliminate an entire organization, then yes, indeed, it may have independent standing. I can't speak... So you're not relying on anything specific, any language in RLUIPA or anything specific to that statute to establish this principle? Absolutely, I am, Your Honor. RLUIPA, by its terms, says that standing is given to anybody residing in a prison. And truly, an organization that is a prison organization resides in a prison. In addition, the requirement to exhaust the grievance procedures is limited to prisoners. And as in derogation of the right to bring constitutional claims, that statute is narrowly construed to be limited to the words it used. I would add, Your Honor, and bring to your attention two cases decided over the summer, one by the Supreme Court, v. Clayton County, which is the case in which the Supreme Court found that gay, lesbian, transgender, etc. rights were rights under Title VII. And at the start of the decision, the Court was very clear, saying that the words of the statute are what matter, not what the congressional intent may have been. And indeed, they note in that case, this meant that the was not previously contemplated. And I would add to that, this Court, in the United States v. Brooker, just a month ago, used Bostick to reach the same conclusion. The statutory... Can I just ask, can I interrupt and just ask, without some confusion I had with the factual claims or the factual disagreement between the parties? Do I understand your position to be that your client's request to hold the quarterly meetings was outright rejected? Because your adversary says that no, that there was just the move of the meetings to the weekends, and the full offer was they could be on Friday, but they could be any weekday. They just couldn't be on Saturdays anymore. The Department of Corrections concocted their own type of quarterly meeting and said, here, you can have this instead. That was more than just moving it from all-day Saturday to Friday night. It included restricting the time, such that it was impossible to conduct a quarterly meeting. It included eliminating a meal. We all can recognize that food and fellowship is critical to religious practice. It included a requirement that any participant from outside had to be qualified as a volunteer, and was going to be limited to four persons. And I want you to in DOCS. It is a person who is certified by DOCS, and who under that certification is precluded from developing any type of relationship with the inmates. That kind of a person is not qualified to participate in a quarterly meeting that is precisely focused on developing enduring and lasting relationships, a central part of almost any religion, but particularly the Religious Society of Franklin. Mr. Detmer, you've reserved three minutes of rebuttal time, and I wanted to ask Judge Cabranes if you had any questions you wanted to pose at this time. No, thank you very much, Judge Williams. Mr. Detmer, you've reserved three minutes of rebuttal time. Do you want to use them now, or we'll hear from Mr. Grubb? I'll wait. I'm happy to wait. Okay, so we'll hear from the attorney. May it please the court. Mark Grubb for the New York State Department of Corrections and Community Supervision and its officers. The district court appropriately denied plaintiffs' motion for a preliminary injunction dictating the scheduling of certain Quaker religious gatherings at Green Haven Correctional Facility, a maximum security prison, because the court had ample discretion to conclude that plaintiffs failed to show a clear likelihood of success on the merits based on the preliminary injunction record. First, it is undisputed that the incarcerated plaintiffs failed to avail themselves of inmate grievance procedures as the Prison Litigation Reform Act requires. The failure precludes plaintiffs' religious land use and Institutionalized Person Act claims, as well as their claims based on the weekly Saturday call-outs. The plaintiffs may not avoid the grievance requirement by using an unincorporated association consisting entirely of prisoners to assert their claim, and plaintiffs failed to show that DOC's grievance procedures were unavailable to them. First, contrary to plaintiffs' claims, the grievance procedures do not bar grievances that affect the class. Rather, they simply require that individuals file their grievances on their own behalf, not on behalf of a class when it might other inmates. Second, the religious holy day calendar did not render pursuing the grievance process a dead end. As plaintiffs acknowledge, quarterly meetings were, in fact, held at Greed Haven for years, notwithstanding the fact that they were not included on the statewide calendar. Second, the plaintiffs did not establish the likely violation of their religious rights. Descendants provide time for plaintiffs to hold quarterly meetings and business meetings of religious nature, albeit not on plaintiffs' preferred dates. The district court's conclusion that the evidence showed at most inconvenience is not clearly erroneous. Rather, it is supported by plaintiffs' own submissions. Well, excuse me, Mr. Group, can I just ask a question about that? Because I just heard Mr. Detmer say that that's not all this is about, that it's not just a and the length of meetings and various other issues that divide the parties. Is he wrong about that? Well, if I can explain, a lot of these are post hoc justifications, and this ties back to the failure to exhaust. A lot of these issues could have been raised and a record developed if plaintiffs had pursued the grievance procedures. But turning to the specifics, docs, based on security concerns, moved the meetings to Fridays, Friday evenings. When the Quakers objected to that, they offered any other weekday evening, and that offer was rejected as well. As to the contents of the particular meetings, what would occur during them, that would be left to coordination between the inmates, the Quaker volunteers, and the facility if the Quakers had accepted the meeting time. There were some changes. This issue about volunteers versus guests. Friends and family or something. Yes, guests. Right. Right. I mean, that was raised on reply for the first time, so the record isn't developed. But if you look at the guest list for the 2014 meetings, which are on pages 521, 524, 527, and 530 of the joint appendix, the registered participants were listed as Quaker volunteers. And with respect to meals, docs offered to accommodate Quaker's request by holding one of the quarterly meetings as a special event, which would allow for a longer meeting, would allow for a meal, and is consistent with what's provided to other religious groups, one special event a year that has a longer duration and more meals. One of the concerns here is equitable allocation of resources among the various religious groups. Green Haven is a maximum security facility with, at the time, 1,900 inmates practicing many different religions, and docs seeks to have policies that ensure that the different religious groups are created equitably. And that is memorialized in one of the policies, which provides for the presumptive number of gatherings for particular religious groups based on the number of adherents. And Mr. Rupp, I have one other question, and this will be my last, about exhaustion. I take it that some of the plaintiffs here are the outside Quaker meetings, and they are asserting their own First Amendment rights, rather as if, I suppose, the local Catholic diocese was complaining that they wanted to send a priest in for something, and there was some dispute about that. They're arguing their own First Amendment rights. Putting aside the RLUPA issue and the exhaustion issues relating to the prisoners and their particular organization, is there any requirement of exhaustion that you would impose on those institutions as plaintiffs, the outside ones? We haven't argued on the record that the outside groups need to exhaust remedies. Okay, that may be the answer, unless you want to say that now you're going to change that position. If you're not arguing it, then don't we have to consider the First Amendment claims as distinct, perhaps, from RLUPA claims, regardless of the exhaustion issue? Correct, but the scope of those First Amendment claims is because certain First Amendment claims, those with respect to the weekly Saturday meetings, are raised by the incarcerated plaintiffs only. So what's left is only the quarterly meeting claims asserted by outside groups based on whatever limited First Amendment right they have to reach into the prison to exercise their freedom, their free exercise. I hear you, and I note that, and Mr. Detmer may want to correct me on rebuttal, but I took it that his principal argument concerns the quarterly meetings. That's the only thing he mentioned, at least in his oral argument, as an issue. That may be the only thing he mentioned, but I know he briefed other things, yeah. Yeah, right, and the outside visitors, they attend the quarterly meetings, but they don't attend the business meetings, right? So there's no claim with regard to those meetings for them, so it's the quarterly meetings. Right, the quarterly meetings are the only claims asserted by the outside religious groups, and as we've described, the only evidence that they presented with emotion was the inconvenience that the weekday schedule caused, which the district court had ample discretion to conclude did not show a clear likelihood of success on the merits as required for a mandatory preliminary injunction. There is a substantial difference between a multi-hour meeting on a Saturday with a meal in terms of those outside Quakers and the ability to come on an evening, especially if you've got to travel, so you could deem it inconvenience, but it might also be prohibitive for those people. Well, what the docs sought to accommodate those concerns by, as to the length, offering one special event a year that would permit for a longer meeting, also with respect to the time of the week, allowing other weekdays, but those concerns of the plaintiffs have to be tempered against the legitimate penological interest of docs, which the Supreme Court precedents state are given particular deference when it comes to the defendant submissions explained why the Saturday meeting time posed security concerns because there was less security staff on duty and because the number of civilian Quakers attending required extra security to protect their safety, and that has to be looked at in the context of the entire institutional setting and the impact that that would have on other security and other areas of the maximum security prison. So, unless the court has any other questions, I ask that you affirm. Thank you. Thank you. We'll hear rebuttal. Mr. Detmer. Thank you, Your Honors. First, regarding mere inconvenience, the words of the district court were that the plaintiffs were merely inconvenienced because none of them testified that their religion required them to meet on a Saturday. That is not a standard that is applicable to the substantial burden test. Second, as we started to talk about on my initial argument, Green Haven Prison Preparative Meeting is not subject to the grievance process because the Well, wait. It's an individual claim, isn't it, that my religious rights have been violated? Why isn't that something that is subject to the grievance proceeding? Because DOPS sets the parameters of grievance proceedings, and it says that inmates can only bring claims in an individual capacity. I assume it's in an individual capacity, but why can't you say in an individual capacity my religious rights have been violated? Because it's not within the scope of DOPS's grievance process. It's not a class proceeding. It's saying I have a right, and it's been violated. I don't see why that's outside the grievance proceeding. You may not be able to say, I want this to be treated as a class grievance. It's an individual grievance. If the plaintiff wins that grievance within the procedure, I suppose the outcome could affect other people as well, if only as a precedent. Well, I think we're debating here the meaning of individual versus representative, and in the context of an unincorporated association, it can only pursue a right in a representative capacity, and DOPS does not allow representative capacity grievances. But I'm not sure that anybody would allow that or should allow that, right? I mean, otherwise you would have, as I was trying to talk about before, all you'd have to do is form an organization of prisoners, and then you could avoid any kind of exhaustion requirement, at least as to any kind of grievance that is not unique to individuals. Your Honor, if the Department of Corrections canceled confession and told the Catholic Church that they can have confession in the middle of Mass, yes, the Catholic Church has standing to bring that claim. Yeah, but that's not a RLUIPA claim. We're talking about the claims that are RLUIPA claims that only the prisoners have. I don't know that it's clear to me anyway that if two Catholic prisoners said, we hereby form the parish of St. Greenhaven, and we want to bring a claim about the denial of confessions as that parish, rather than as two individual prisoners individually saying, I was denied my right to confession. It's hard for me to see why that would be, you know, how that would avoid Congress's requirement that you have grievance, exhaust your grievance procedures. Congress required prisoners who exhaust grievance procedures, and no one else. That's their words, and those are the words that are in the statute. Prisoners. They used a different word in RLUIPA. They used persons in RLUIPA. They did not use persons in the Prison Litigation Reform Act. They used the word prisoners. Congress knew what they were doing, and statutory interpretation calls for accepting what Congress said. Thank you, Mr. Detmer. I think you've used your rebuttal, and unless there are any further questions from any member of the panel, we will take the matter under advisement. Thank you. Thank you. Thank you. That's the last case on the calendar to be argued this morning, so I'll ask the clerk to call the roll. Court sends adjourned.